## Fretton *versus* Karcher.

77      423
21 SC ³638

1. A court has the right to direct a jury to return a special verdict.

2. It is the right of a party to ask the court to submit to the jury all the material and controverted facts on which evidence has been given, and to withhold all alleged facts of which there has been no evidence.

3. If a seizure be made under a landlord's warrant when no rent is due, the landlord issuing the warrant is a trespasser *ab initio.*

4. The Act of March 21st 1772, giving double damages under an illegal distress, applies to the persons distraining, not to those in whose name the distress was made.

5. In an action to recover double damages the action must be under the Act of 1772 ; not trespass at common law.

February 12th 1875.    Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia :* Of January Term 1873, No. 236.

This was an action of trespass, brought March 31st 1868, by John F. Karcher against Ferdinand Fretton and Frederica Fretton. The trespass complained of was levying on the goods of the plaintiff under a distress for rent ; the plaintiff alleging that no rent was due.

The premises on which the distress was made were a vacant lot occupied as a marble-yard, and belonging to Mrs. Fretton ; the plaintiff was her lessee.    He had occupied the lot for some years, at an annual rent o $50, the year expiring on the 20th of January. The defendants alleged that the terms of the lease had been changed, and that it was to commence on the 20th of January 1867, at a rent of $150 per annum, payable monthly.    The claim for rent at this rate not having been paid, the defendants, on the 20th of September 1867, issued a landlord's warrant to Allen Voorhees, a constable, for " $100, eight months' rent due" on that day.

The case was tried in 1869, and a verdict rendered for the defendants.    A new trial having been granted, it was tried the second time, November 13th 1872, before Thayer, J.

The plaintiff gave in evidence the landlord's warrant, the list of goods levied on September 26th 1867, consisting of marble work, finished and unfinished, the appraisement by Andrew M. Donahue and E. D. Woodruff, October 2d 1867, amounting to $343 ; the appraisement was sworn to by the appraisers.

The plaintiff testified as to the original renting at $50.    " After the end of three years, Mrs. Fretton demanded $150 ; the fourth year she sent me a notice to see her ; she said the rent was to be $150 per year.    I said I was satisfied; if she would enclose a lot I would pay it.    I never paid by the month.    The constable came there to collect the rent, the fifth month after the new rent began. The constable's advertisement was the only paper I had got.    It was put upon a tombstone."

[*Fretton v.* Karcher.]

On cross-examination he said, "I got a notice from the alderman in 1866, and then I called on her. * * * I remained on the lot till I got my notice to quit (October 12th 1867). Voorhees did not give me a notice a week or so before the appraisement." He said that Voorhees, at the time of the levy, did not say that he had a landlord's warrant.

The plaintiff then gave evidence by himself and others as to the circumstances of the levy, sale, &c., for the purpose of showing irregularity and unfairness in them, and also that there was personal violence to himself by those conducting the levy and sale. There was evidence that Mr. Fretton was at the sale and bid, but none of his having taken any other part in the matter after issuing the landlord's warrant, nor was there any evidence that Mrs. Fretton took any part after signing the warrant.

For the defendants, Donahue, one of the appraisers, testified that all the appraisement was in his writing and made at the instance of Voorhees; Woodruff, the other appraiser, was dead. Both appraisers were sworn before they made the appraisement. "At the time we were making the appraisement Karcher was present; I asked Voorhees if he had given him a copy of the levy and distress; he said he had. * * * The valuation was a fair one at what it would bring at a forced sale. Woodruff kept an account at the time of sale." Witness further testified that the sale was properly conducted, that the plaintiff was boisterous, threatening to kill the constable, witness, and any one who entered the premises. Witness was not a freeholder; he was a renter from year to year; he did not know whether Woodruff was. The sale was six days after the appraisement.

The testimony of E. D. Woodruff, one of the appraisers, deceased, taken at the first trial, was read from the notes of counsel. He testified that he had made the appraisement at the instance of Voorhees; "We were sworn and made the valuation; plaintiff was present when the appraisement was made. Voorhees told him he had levied, and would sell unless the rent was paid. * * * I am not a freeholder."

The defendants requested the court to charge:

1. That if the jury find there was a landlord's warrant issued by the defendants to Allen Voorhees, the constable, and he distrained the property under that warrant, and sold the same according to law, this action cannot be sustained.

2. That if the jury find that the constable made a distress upon the property in dispute, and when he so distrained, gave notice to Karcher that he had levied upon his property and then had the same appraised by two competent persons, whom he called as freeholders to make such appraisement, and then made the sale, after giving public notice as required by law, there can be no recovery by the plaintiff in this action.

[Fretton *v.* Karcher.]

3. That should the jury find that the landlord's warrant was regularly issued to the constable, Voorhees, and he made a distress and gave notice of the same when it was made, and called two appraisers, and they were not owners of real estate or freeholders, in that acceptation of the word freeholder; still the defendant would not be a trespasser "*ab initio*," because the men who made the appraisement were not the owners of real estate at the time, as the selection of the appraisers was the official act of the constable, for which the defendant cannot be made liable in trespass.

4. That under the Act of Assembly and the law, the constable executing a landlord's warrant is made the judge officially of the qualification of the appraisers he selects to appraise the goods levied upon by him under such warrant, and the landlord is not responsible in trespass for such an official act of the constable.

5. That even should the jury find that the whole amount of rent claimed under the landlord's warrant in this case was not due, still this action of trespass cannot be sustained on that ground.

6. That where it is alleged an excessive distress has been made, the remedy is by an action on the case under the Act of 1872, and not in trespass.

7. That where there has been an excessive distress for rent by a landlord against his tenant, the remedy by the tenant is by an action in replevin, and not in action of trespass.

8. That unless the jury find that the defendants have done some illegal act themselves, or directed some act to be done by the constable that was not judicial by him, they cannot be made liable in this action of trespass.

9. That when the law has confided to a constable the exercise of his judgment in the selection of appraisers, and he acts wrongfully by not making the proper selection, he may be held liable; but a landlord who had no power or authority to control such acts would not be a trespasser "*ab initio*," because he directed his warrant to an officer who erred in judgment as to the qualification of the men he selected to appraise the goods which he had distrained for rent that was due, if all the other requisitions of the law in relation to a distress under a landlord's warrant were complied with.

The court did not answer the points, but directed the jury to find a special verdict upon all the facts in the case. The several questions which were deemed material by the court were reduced to writing and submitted to the counsel for the respective parties, who were told that if there were any other questions of facts upon which in their judgment it was material for the jury to pass, they might add them, and the court would instruct the jury to find how such facts were. No addition being suggested, the court then directed the jury to find a special verdict upon the several questions of fact submitted to them. [In order to enable the jury

[Fretton *v.* Karcher.]

to find correctly upon the sixth question of fact submitted to them, the court instructed them that a tenant from year to year was not a freeholder within the meaning of the Act of 1772, which requires the appraisement of goods distrained to be made by two reputable freeholders.] All other questions of law arising upon the special verdict were reserved, and were subsequently argued before the court in banc.

The following were questions of fact submitted by the court to the jury, with the answers of the jury.

2. Whether any, and if so, what amount of rent was due by the plaintiff to Mrs. Fretton at the date of the distress made? "We find that there was none."

5. Whether any notice of the distress with the cause of it was given to the plaintiff, or left upon the premises five days before appraisement? "We find that no notice was given."

6. Whether any appraisement was made of the goods distrained? and if so by whom? and are the persons by whom said appraisement was made freeholders or not? and whether they were duly sworn? and who appointed said appraisers? "Find: that the goods were distrained by Allen Voorhees, constable, appraised by a Mr. Donahue and E. D. Woodruff, who were not freeholders and not duly sworn."

8. Whether six days' public notice was given of such sale after the making of such appraisement and before said sale? "Find that there was no notice given."

9. If the jury find that notice of the distress and cause of it was not given to the plaintiff or left upon the premises five days before the appraisement, then they are to find whether the defendants knew that fact before or at the time of the sale.

10. If the jury find that the persons who made the appraisement were not freeholders, then they are to find whether the defendants knew that fact at or before the sale.

11. If the jury find that six days' public notice was not given of said sale after the appraisement and before said sale, then they are to find whether defendants knew that fact at or before the sale.

To the 9th, 10th and 11th questions, the answers of the jury were: "Find that defendants knew these facts at and before the sale."

The jury to assess the damages, subject to the opinion of the court, on the law arising from the facts found by them; the facts are to be put into the form of a special verdict.

The finding was:

"To the above points as answered we do agree and find a verdict for the plaintiff, and assess the damages at twenty-five hundred dollars."

A motion was made by the defendants for a rule for a new trial: the rule was granted and after argument discharged on condition

[Fretton *v.* Karcher.]

of a remittitur by the plaintiff of $1250 of the verdict. The plaintiffs entered a remittitur for $1250, and judgment was then entered on the verdict.

The defendants took a writ of error; they assigned for error:

1, 4, 5. Refusing to answer the points submitted by them.

2, 3. The part of the charge in brackets.

6–11. Submitting the case to the jury on propositions by the court of its own motion, and without giving instructions as to the law applicable to the facts and without any instructions for their direction.

12. Directing a special verdict, there being disputed questions of law and fact.

13. Entering judgment on the special verdict.

14. Submitting to the jury whether the appraisers were sworn, the oath having been given in evidence and the appraisers having testified that they had been sworn.

15, 16, 17. There was no evidence as to the knowledge of the defendants of the facts submitted by the court to the jury in the 9th, 10th and 11th propositions.

*A. V. Parsons,* for plaintiffs in error.—The court should have answered defendants' points: Slaymaker *v.* St. John, 5 Watts 27; Bellas *v.* Hays, 5 S. & R. 427; Freeman *v.* Pennock, 3 Penna. R. 317; Fisher *v.* Larick, 3 S. & R. 319. The defendants were not answerable for what the constable did in the execution of the warrant; that having been done officially: Commonwealth *v.* Sheppard, 4 Penna. Law Jour. 182; Quinn *v.* Wallace, 6 Whart. 452; Addison on Contracts 369; Freeman *v.* Rosher, 13 Q. B. 780; McKinney *v.* Reader, 6 Watts 34. There was no evidence of defendants' knowledge of the acts of the constable and a question based on it should not have been submitted to the jury: Snyder *v.* Wilt, 3 Harris 59; Haines *v.* Stouffer, 10 Barr 363; Brown *v.* Clark, 2 Harris 469.

*R. P. White,* for defendant in error.

Mr. Justice MERCUR delivered the opinion of the court, May 10th 1875.

On the trial of this cause the counsel for the plaintiff in error asked the court to charge the jury on nine written points. The court answered one only, and under exceptions directed the jury to find a verdict on eleven points framed by the court, and to assess the damages, subject to the opinion of the court on the law arising from the facts to be found by the jury. This gives rise to the first assignment of error.

The court had the undoubted right to direct the jury to return a special verdict. It is one of the recognised modes by which the facts are put into the record: Miller *v.* Hershey, 9 P. F. Smith

64. The question, however, arises as to the correctness of the specific manner in which the court submitted the facts to the jury. It was the right of the counsel to ask the court to submit to the jury all the material and controverted facts on which evidence had been given, and to withhold from them all the alleged facts, in support of which no evidence had been given.

The defendant in error sought to establish two controlling facts. The one, that no rent was due when the distress was made; the other, that the proceedings relating to the sale were grossly and intentionally irregular and defective. The former, to give a right to recover; the latter, to enhance the damages. As the jury found no rent was due, the plaintiffs in error were thereby adjudged trespassers *ab initio*, and the right to recover against them the value of the goods distrained, was established. This practically disposes of all the assignments not relating to the measure of damages. The first five assignments are therefore not sustained.

The remaining assignments may be considered together.

An examination of the testimony shows that each of the appraisers positively and distinctly testified that they were duly sworn; there was no evidence to contradict it, yet the court submitted to the jury to find that they were not sworn, and they so found.

The court also submitted to the jury to find that the plaintiffs in error, before and at the time of the sale, knew these three facts.

1. That notice of the distress and cause of it was not given to the defendant in error, or left on the premises five days before the appraisement.

2. That the persons who made the appraisement were not freeholders.

3. That six days' public notice was not given of the sale after the appraisement and before the sale.

A careful reading fails to disclose any evidence that the plaintiffs in error had any knowledge of either of these facts. Mrs. Fretton is not shown to have had any knowledge whatever of the proceedings after she signed the landlord's warrant which was directed to the constable. Mr. Fretton thereafter participated on the day of sale only. He is not shown to have had any knowledge of any irregularity in the proceedings in the intermediate time. He was at the sale and bid off some property. There is no evidence that any notice was there given, or any averment there made, by any person, that all the proceedings were not regular and according to law.

It cannot admit of doubt that this supposed knowledge of the plaintiffs in error must have unduly influenced the minds of the jurors. It would naturally strike them as a wanton disregard of duty, and a reckless exercise of a pretended right through the forms of law. It must have been those facts, found without testi-

[Fretton v. Karcher.]

mony, that caused the jury to return a verdict for $2500. After one-half of that sum was remitted it still stands for more than three times the sum at which the property was appraised under oath. It was contended, that inasmuch as it was found that no rent was due and in arrear, the 3d sect. of 21st March 1772, gave the right to recover double the value of the goods and chattels distrained and sold. There are two answers denying that right here.

1. The action was not brought, nor did the defendant in error declare under that statute: Morrison v. Gross, 1 Browne 1; Rees v. Emerick et al., 6 S. & R. 286; Campbell v. Finney, 3 Watts 86; Hughes et al. v. Stevens, 12 Casey 320.

2. This action is not against the "person or persons distraining," but against the persons in whose names the distress was made. The Act of 21st March 1772, giving double damages, applies to the former, and not the latter: Wells v. Hornish, 3 Penna. R. 30. This action was at common law. The record does not show that any point was made by either counsel or court, in regard to the measure of damages. The good faith of the plaintiffs in error, on the one hand, or their participation in the officer's wilful disregard of his official duty on the other, will have a legitimate influence on the question of damages. The errors are therefore sustained.

Judgment reversed and a *venire facias de novo* awarded.